UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――

CATHERINE L. KAMINSKI,

               Plaintiff,

      V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

               Defendant.

―――――――――――――――――――――――――――――

**REPORT AND
RECOMMENDATION**

09-CV-655
(GLS/VEB)

## I. INTRODUCTION

In April of 2006, Plaintiff Catherine L. Kaminski filed an application for supplemental security income ("SSI") benefits under the Social Security Act. Plaintiff alleges that she is unable to work due to physical and mental impairments. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through her attorneys, Conboy McKay Bachman & Kendall, LLP, Lawrence D. Hasseler, Esq., of counsel, commenced this action for judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 19).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for SSI benefits on April 17, 2006. (T at 66, 105).[1]  The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held before ALJ Elizabeth Koennecke on June 23, 2008, in Watertown, New York. (T at 517).  Plaintiff appeared with her attorney and testified. (T at 396-408).  Plaintiff's mother, Margaret Kaminski, also appeared and testified at the hearing. (T at 409-421).

On September 16, 2008, ALJ Koennecke issued a written decision finding that Plaintiff was not disabled and denying her application for benefits. (T at 25-38).  The ALJ's decision became the Commissioner's final decision on May 20, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 5-8).

Plaintiff, through counsel, timely commenced this action on June 5, 2009. (Docket No. 1).  The Commissioner interposed an Answer on September 21, 2009. (Docket No. 9). Plaintiff filed a supporting Brief on November 3, 2009. (Docket No. 11).  The Commissioner filed a Brief in opposition on February 4, 2010. (Docket No. 21).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 8).

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

motion be granted, Plaintiff's motion be denied, and this case be dismissed.

## III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the

court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since March 30, 2006, the application date. The ALJ concluded that Plaintiff had the following impairment, which the ALJ considered "severe" under the Act: mild mental retardation. (T at 30).   However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 32).

The ALJ concluded that Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels, but was limited by her nonexertional impairment to unskilled work. (T at 34).

Applying the Medical-Vocational Guidelines (commonly referred to as the "Grids"), the ALJ concluded that a finding of "not disabled" was required based upon Plaintiff's

residual functional capacity. (T at 38).  As noted above, the ALJ's decision became the Commissioner's final decision on May 20, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 5-8).

### 2.   Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  She offers six (6) principal arguments in support of this position.  First, Plaintiff asserts that she has an impairment or combination of impairments that meets or equals one of the impairments set forth in the Listings.  Second, Plaintiff argues that the ALJ did not properly consider the medical opinion evidence of record.   Third, Plaintiff contends that the ALJ erred when assessing her mental disorder.  Fourth, Plaintiff alleges that the ALJ did not properly assess her credibility.  Fifth, she asserts that the ALJ incorrectly relied upon the Medical-Vocational Rules (the "Grids") and should have consulted a vocational expert.  Sixth, Plaintiff argues that the Appeals Council should have considered additional evidence submitted after the ALJ's decision was rendered.  This Court will address each argument in turn.

### a.   Listings § 12.05

As discussed above, if a claimant suffers from an impairment or combination of impairments that meets or medically equals one of the impairments contained in the Listings, the claimant will be considered disabled.

Impairments listed in Appendix 1 of the Regulations are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity. Accordingly, a claimant who meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir.1995); see

20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing.  See Naegele v. Barnhart, 433 F. Supp.2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

To show that an impairment matches a Listing, the claimant must show that his or her impairments meet all of the specified criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. § 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. Sullivan, 493 U.S. at 530. To satisfy this burden the claimant must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b). Abnormal physical findings "must be shown to persist on repeated examinations despite therapy." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B). Further, the medical reports must indicate physical limitations based upon actual observations and/or clinical tests, rather than the claimant's subjective complaints. Id.

In the present case, Plaintiff contends that her mental impairments meet or medically equal the impairment set forth in § 12.05 (c) of the Listings.  Listing § 12.05(C) concerns sub-average intellectual functioning caused by mental retardation. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C). An adult will be considered disabled under the Social Security Act due to mental retardation if certain criteria set forth in the Listing are met. Meashaw v.

7

Chater, No. 94-CV-1154, 1997 WL 16345, at *3 (N.D.N.Y. Jan. 7,1997).

Specifically, to satisfy the requirements of Listing § 12.05(C), the claimant must show: (1) a valid verbal, performance, or full scale IQ of 60 through 70; (2) an onset of the impairment before age 22; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function. See id., at *3; see also Alvarado v. Barnhart, 432 F. Supp.2d 312, 315 (W.D.N.Y.2006); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C).

In this case, the ALJ concluded that the requirements of § 12.05 (C) were not met because "the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. (T at 33).

Plaintiff had two IQ tests that yielded scores within the range required to satisfy the first prong of § 12.05. (T at 249, 325).[4] There is no suggestion that the scores were invalid. It is not clear what criterion upon which the ALJ relied.  However, it appears the ALJ's (implicit) finding was that Plaintiff did not meet § 12.05 (C) because she did not have a physical or other mental impairment imposing an additional and significant work-related limitation of function.

The Second Circuit "has not yet ruled on what test should be utilized in determining whether a claimant's 'physical or other mental impairment,' other than his low IQ imposes a significant work-related limitation." Edwards v. Astrue, No. 07–CV–898, 2010 WL

---

[4]The first test, given in September of 2005 by the Oneida-Lewis ARC, indicated a verbal IQ score of 79, performance IQ of 74, and full scale IQ of 69. (T at 249).  The second, administered in June 2006 by a consultative examiner, yielded a verbal scale IQ of 70, performance scale IQ of 68, and full scale IQ of 66. (T at 325).

3701776, at *6 (N.D.N.Y. Sep't 16, 2010). The district courts of the Second Circuit have generally adopted the view of the First, Eighth, and Tenth Circuits to the effect that "a limitation other than low IQ is 'significant' if the claimant suffers from an additional physical or other mental impairment that is 'severe' as that term is defined at step two of the Commissioner's sequential analysis." Id.; see also Baneky v. Apfel, 997 F. Supp.2d 543, 546 (S.D.N.Y.1998); Aviles v. Barnhart, No. 02–CV–4252, 2004 WL 1146055, at *7 (E.D.N.Y. May 11, 2004); Velezquez v. Chater, No. 93–CV–0264E,1996 WL 107109, at *2 (W.D.N.Y. Mar. 6, 1996).

In this case, the ALJ found a single severe impairment at step two of the sequential analysis—mild mental retardation. (T at 30). The ALJ did not find any severe physical or impairments or other severe mental impairments.   Plaintiff points to the following impairments, which she contends are "severe" as defined at step two and which therefore should have satisfied the final prong of the § 12.05 (C) test: diabetes, vision problems, obesity, and back/hip pain. This Court finds Plaintiff's argument unavailing for the following reasons.

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only

9

a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

In the instant case, Plaintiff has been diagnosed with diabetes, but the record indicates that it is well-controlled with medication, and there is no evidence that diabetes would materially impact Plaintiff's ability to work. (T at 241, 408).   Likewise, Plaintiff's medical record documents visions problems related to glaucoma and cataracts. (T at 200, 236).   However, Plaintiff's vision impairment was generally found to be mild or moderate, she wore glasses only for reading, and there is no indication that her vision would have more than a minimal effect on her ability to work. (T at 238, 239, 316, 361, 367, 371, 400).[5] The record indicates minimal treatment for back and hip pain, but no medically determinable impairment has been cited or established as the cause of those complaints and with treating providers and a consultative examiner found no limitations with regard to walking, standing, sitting, lifting, carrying, and other exertional tasks. (T at 241, 245, 317). In addition, although the record does document obesity, there is no indication of any functional limitations imposed by that condition.

For the foregoing reasons, this Court finds that the ALJ's conclusion that Plaintiff's impairments did not meet or medically equal § 12.05 (C) of the Listings is supported by substantial evidence.

---

[5]Vision testing in 1997 indicated 20/30 vision in both eyes. (T at 238). Testing from 2003 indicated 20/25 vision in the right eye; 20/30 in the left.  (T at 239).  A 2006 test by a consultative examiner indicated 20/40 on the right and 20/70 in the left, with both eyes at 20/50 at twenty feet. (T at 316).  Records from the Watertown Eye Center documented visual acuity at 20/25 or 20/30. (T at 261, 376).

### b.    Consideration of Medical Opinion Evidence

Plaintiff contends that the ALJ did not properly assess the medical opinion evidence of record.  In support of this argument, Plaintiff points to a May 2005 assessment by treating physician Dr. Frank Harvey, who opined that Plaintiff was moderately limited with regard to seeing/hearing/speaking; understanding and remembering instructions; carrying out instructions; maintaining attention and concentration; and maintaining basic standards of personal hygiene and grooming. (T at 245).  Dr. Harvey also indicated that Plaintiff was very limited in terms of functioning in a work setting at a consistent pace. (T at 245).  His overall assessment was that Plaintiff was not suited for work "due to limitations in speech and response times." (T at 246).

Plaintiff also cites a mental residual functional capacity assessment prepared by Carol Hill, who is identified as a registered nurse and reviewing social worker.  Ms. Hill indicated that Plaintiff had moderate limitations with regard to many aspects of understanding and memory and a marked limitation with respect to understanding and remembering detailed instructions. (T at 259). Ms. Hill opined that Plaintiff was markedly limited as to carrying out detailed instructions; maintaining attention and concentration for extended periods; and performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances. (T at 259). Ms. Hill found marked limitations with respect to completing a normal workday and workweek without interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. (T at 260).

Plaintiff also notes that Dr. Stephen Fitzgerald, PhD. opined in September of 2005 that Plaintiff "should be considered for sheltered or supported employment." (T at 250).

11

Plaintiff contends that this finding suggests an inability to perform competitive, remunerative work on a sustained basis.

The ALJ concluded that Plaintiff retained the residual functional capacity to perform the basic mental demands of competitive, remunerative, unskilled work; including the ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. (T at 34).  This Court finds the ALJ's determination supported by substantial evidence.

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[6]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R.

---

[6]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

§ 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

The ALJ properly discounted Dr. Harvey's opinion, which predated Plaintiff's application for benefits by nearly a year and which was unsupported by any accompanying data (e.g. treatment notes, clinical examinations). Moreover, Dr. Harvey's assessment was contrary to the weight of the evidence, as outlined below. See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir.2004) (observing that treating physician's opinion "is not afforded controlling weight" where it is "not consistent with other substantial evidence in the record, such as the opinions of other medical experts"); 20 C.F.R. § 404.1527(d)(2) (according controlling weight to treating physician's opinion if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and ... not inconsistent with other substantial evidence in ... case record").

Although Dr. Fitzgerald did suggest sheltered or supported employment, he assigned a Global Assessment Functioning ("GAF") score of 75 to Plaintiff, which "equates to symptoms that are transient and expected reactions to pyschosocial stresses and no more than a slight impairment in social, occupational or school functioning." Mix v. Astrue, No. 09-CV-0016, 2010 WL 2545775, at *5 n.2 (W.D.N.Y. June 18, 2010)(quoting American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. 2000)).

Concerning Nurse Hill's report, it does not appear that Ms. Hill was either a treating source or an acceptable medical source as defined under the Regulations. In any event, her assessment is contradicted by substantial evidence of record. Dr. Jeanne Shapiro, a

consultative examiner, opined that Plaintiff appeared to be capable of understanding and following simple directions and performing simple tasks with supervision and independently. (T at 322).  Dr. Shapiro indicated that Plaintiff could work "in an appropriate setting in a position for which she has been adequately trained." (T at 322).[7]  She also found that Plaintiff could maintain attention and concentration to tasks, relate to and interact with others, attend to a routine, and maintain a schedule. (T at 322).

Additional support for the ALJ's assessment is found in the report of Dr. Kamin, a non-examining state agency review psychologist.  Dr. Kamin opined that Plaintiff had mild restrictions with regard to activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in terms of maintaining concentration, persistence, or pace. (T at 344).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Such reliance is particularly appropriate where, as here, the opinions of these

---

[7]Plaintiff argues that the ALJ should have explored more deeply what Dr. Shapiro meant by an "appropriate setting."  A fair reading of Dr. Shapiro's entire assessment indicates that she intended to opine that Plaintiff could work in a setting that only required her to make simple decisions, a finding entirely consistent with the ALJ's RFC determination.

14

examining and non-examining State agency medical consultants  are supported by the weight of the evidence.  See Brunson v. Barnhart, 01-CV-1829, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (holding that opinions of non-examining sources may be considered where they are supported by evidence in the record).  Although the record clearly demonstrated limitations with regard to intellectual functioning, substantial medical opinion evidence supported the ALJ's conclusion that Plaintiff was capable of performing simple, unskilled work on a sustained basis.

### c.    Evaluation of Mental Disorder

When evaluating the severity of mental impairments, the regulations require the ALJ to apply a "special technique" at the second and third steps of the review, in addition to the customary sequential analysis. Kohler v. Astrue, 546 F.3d 260, 265-66 (2d Cir.2008) (citing 20 C.F.R. § 404.1520a).

The technique first requires a determination of whether the Plaintiff has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the degree of Plaintiff's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. See 20 C.F.R. § 404.1520a(c)(3).

These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4); 416 .920a(c)(4).  A mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation. § 404.1520a(d)(1). The ALJ must document "a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(2).  If the mental impairment is found to be severe, at the third step of the

15

review, the ALJ must consider whether the claimant's mental impairments meet or medically equal of the listed impairments.  If the impairments do meet or medically equal one of the impairments set forth in the Listings, the claimant will be found to be disabled. If not, the ALJ is then required to assess the claimant's residual mental functional capacity. § 404.1520a(d)(3).

In this case, the ALJ found that Plaintiff did have a severe mental impairment - mild mental retardation. (T at 30).  As discussed above, the ALJ concluded that Plaintiff's impairment did not meet or medically equal one of the impairments set forth in the Listings. (T at 32).  The ALJ concluded that Plaintiff had a mild restriction with respect to her ability to engage in activities of daily living, mild limitation in terms of social functioning, and moderate difficulties with regard to maintaining concentration, persistence, or pace. (T at 33).

Plaintiff challenges these findings by noting, for example, that Plaintiff (a 46-year old woman) could only maintain activities of daily living by residing with her parents and receiving significant support from them. (T at 408-13).  In addition, Plaintiff notes that she has difficulties establishing friendships and her attempt to maintain employment as a babysitter was terminated because she was suspected of spanking a child. (T at 122, 402). A June 2002 consultative assessment from Dr. Carol Joriman indicated that Plaintiff "may have some difficulty functioning on her own or living independently." (T at 201).  As discussed above, Dr. Harvey indicated moderate limitations with regard to maintaining basic standards of personal hygiene and grooming and significant limitations in terms of functioning in a work setting at a consistent pace. (T at 245).  Dr. Fitzgerald's adaptative functioning assessment indicated extremely low social skills. (T at 249).

16

This Court finds Plaintiff's arguments unavailing.  It is well-settled that "[c]onflicts in evidence . . . are for the Commissioner to resolve. White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)).  Where, as here, there are conflicts in the medical evidence, it is the ALJ's decision that controls as factfinder. Id.  If the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." Id. (citing Veino v. Barnhart, 312 F.3d at 586).

The ALJ's assessment of the limiting effects of Plaintiff's mental impairment was adequately supported by evidence having rational probative force.  Plaintiff did, in fact, maintain full-time employing providing full-time care for three young children for several years. (T at 80).  She volunteered at the "Fireman's Auxiliary," managed her own medication, performed basic household chores, and successfully completed a course in food preparation. (T at 200, 249, 321, 398, 405, 415).  Dr. Joriman's assessment pre-dated the application for benefits by several years, was equivocal in its findings, and was based only upon a 20-minute examination. (T at 201).  Dr. Fitzgerald's adaptative functioning scores were based solely upon reports from Plaintiff's mother. (T at 249).  His overall assessment (as reflected in the GAF scores he assigned) was that Plaintiff exhibited no more than a slight impairment in social, occupational or school functioning. (T at 250).  Dr. Shapiro, the consultative examiner, opined that Plaintiff could maintain attention and concentration to tasks, relate to and interact with others, attend to a routine, and maintain a schedule. (T at 322).  In light of this evidence, this Court finds no reversible error with regard to this aspect of the ALJ's decision.

### d.   Credibility

Courts in the Second Circuit have determined pain is an important element in disability claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

18

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1.   [Plaintiff's] daily activities;
2.   The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3.   Precipitating and aggravating factors;
4.   The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.   Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6.   Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7.   Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's contentions are not credible, the ALJ must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff contends that the ALJ improperly discounted her testimony concerning her physical pain and mental limitations.  Plaintiff testified that she experiences fatigue and dizziness as a result of her diabetes.  (T at 398).  She stated that she has occasional blurred vision, along with soreness and aches in her back and left hip. (T at 399-400).  Plaintiff testified that she is afraid to drive a motor vehicle and has difficulty with disorder.  (T at 403-04).

19

This Court finds Plaintiff's argument to be without merit.  As outlined above, the ALJ's conclusion that Plaintiff's physical limitations were non-severe was supported by substantial evidence.  Indeed, Plaintiff's own testimony tended to minimize the severity and frequency of her symptoms (e.g. describing the pain as "soreness" and "aches" and indicating that the blurred vision was relatively sporadic and brief).  Likewise, as discussed above, the ALJ's assessment of Plaintiff's mental limitations was generally supported by the findings of Dr. Fitzgerald, Dr. Shapiro, and Dr. Kamin, as well as the evidence concerning Plaintiff's activities of daily living.

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

The Court finds that the ALJ properly exercised her discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d

20

Cir.1984).  The ALJ's decision should therefore be upheld.

e.    **Reliance on the Grids**

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to (1) assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then (2) determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F. Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting,

standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

As the Second Circuit explained in Pratts v. Chater, the applicability of the Grids is determined on a case-by-case basis. Pratts, 94 F.3d at 39 (citing Bapp, 802 F.2d at 605-06).  When nonexertional impairments are present, the ALJ must determine whether those impairments "significantly" diminish the claimant's work capacity beyond that caused by his or her exertional limitations. Id.  A claimant's work capacity is "'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" Id. (quoting Bapp, 802 F.2d at 606).

"The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15.  "A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." Id.

In this case, the ALJ found that Plaintiff had no significant limitations with regard to the performance of the basic mental demands of unskilled work.  As such, she concluded that a finding of "not disabled" was directed by Section 204.00 of the Grids. (T at 38). Plaintiff challenges this finding, arguing that the testimony of a vocational expert was required because her nonexertional impairments significantly diminish her work capacity.

For the reasons outlined above, this Court finds that the ALJ's assessment of Plaintiff's mental impairments was supported by substantial evidence.  As such, this Court finds no error with regard to the ALJ's use of the Grids.   In other words, substantial evidence supported the ALJ's determination that Plaintiff's mental impairment did not significantly diminish her work capacity and, accordingly, the ALJ's reliance on the Grids was proper.  See SSR 85-16 ("Thus, an individual, in whom the only finding in intellectual testing is an IQ between 60 and 69, is ordinarily expected to be able to understand simple oral instructions and to be able to carry out these instructions under somewhat closer supervision than required of an individual with a higher IQ. Similarly, an individual who has an IQ between 70 and 79 should ordinarily be able to carry out these instructions under somewhat less close supervision.").

### f.    Additional Evidence

The Appeals Council shall consider "new and material" evidence if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); see also § 416.1470(b); Perez v. Chater, 77 F.3d 41, 45 (2d Cir.1996). The Appeals Council "will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b); see § 416.1470(b)."

To obtain a review of the additional evidence, the claimant must establish that "the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." Sergenton v. Barnhart, 470 F.Supp.2d 194, 204 (E.D.N.Y.2007) (citing Lisa v. Sec'y of Health & Human Servs., 940 F.2d 40, 43 (2d Cir.1991)).

Evidence is "material" if there is "a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." Id. If the Appeals Council fails to consider new, material evidence, "the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence." Shrack v. Astrue, 608 F.Supp.2d 297, 302 (D.Conn.2009).

In this case, Plaintiff submitted a March 2006 determination from the Lewis County Department of Social Services, finding that Plaintiff was disabled and eligible for Medicaid benefits. (T at 423).   The Appeals Council considered this determination, which was referenced in a letter submitted by Plaintiff's counsel, dated October 27, 2008, but concluded that it did not provide a basis for changing the ALJ's decision. (T at 6-8).

While the Appeals Council was obliged to consider the Medicaid determination (and it appears to have done so), the Medicaid determination was not binding upon the Commissioner.   As such, this Court finds no error with regard to this aspect of the Commissioner's decision. See Hughes v. Apfel, 992 F. Supp. 243, 249 (W.D.N.Y.1997)(noting that while "determination of disability for the purpose of Medicaid eligibility should have been considered, it is clear that such decisions by any other governmental or nongovernmental agencies are not binding on the Commissioner")(citing

24

20 C.F.R. § 404.1504).

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. It is clear that the ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating providers, the consultative examiners, and the non-examining consultant, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering her decision that Plaintiff is not disabled. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the Commissioner be GRANTED judgment on the pleadings and that Plaintiff's motion for judgment on the pleadings be DENIED.

Respectfully submitted,

Dated:   February 21, 2012

Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

25

**V. ORDERS**

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

February 21, 2012

Victor E. Bianchini
United States Magistrate Judge

27